IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>    Plaintiff,<br><br>  v.<br><br>MGM'S CABINET INSTALLATION SERVICES and MICHAEL GORDON MOXLEY,<br><br>    Defendants.<br>                                      / | No. C 08-01164 WHA<br><br>**ORDER DENYING MOTION FOR DEFAULT JUDGMENT AND SETTING ASIDE DEFAULT** |

## INTRODUCTION

In this ERISA action, plaintiff Carpenters Pension Trust Fund for Northern California sued defendants MGM's Cabinet Installation Services and Michael Gordon Moxley to recover amounts incurred and owed to the Pension Fund due to MGM's Cabinet's purported withdrawal from an employee benefit plan. Default was entered against defndants. The Pension Fund now requests that default judgment be entered against MGM Cabinet and Mr. Moxley. They seek judgment in the amount of the withdrawal liability, accrued interest, attorney's fees, costs and expenses. For the reasons stated below, the motion is **DENIED** and the clerk's entry of default is **SET ASIDE**.

## STATEMENT

Defendant Mr. Moxley is the sole owner of defendant MGM's Cabinet, which installs commercial and residential cabinetry. MGM's Cabinet is an employer. 29 U.S.C. 1002(5).

Plaintiff the Pension Fund is a multi-employer plan established pursuant to a written agreement and declaration of trust to provide pension benefits. 29 U.S.C. 1002(37). Benefits must be provided in accordance with an employee-benefit plan ("Plan"). 29 U.S.C. 1002(2) and (3).

MGM Cabinet was signatory to a collective bargaining agreement ("CBA") with the Carpenters 46 Northern California Counties Conference Board of the United Brotherhood of Carpenters and Joiners of America. According to the terms of the CBA, MGM's Cabinet was required to make contributions to the Pension Fund on behalf of its employees. It was also bound by the terms and conditions of the trust agreement establishing the Pension Fund.

On July 1, 2004, MGM's Cabinet ceased contributing to the Pension Fund on behalf of its employees. This constituted a complete withdrawal from the Plan, thereby obligating defendants to make a withdrawal liability payment. 29 U.S.C. 1381 and 1383(a)(2). The Pension Fund determined the amount of withdrawal liability. 29 U.S.C. 1382 and 1391.

In a letter dated March 8, 2005, plaintiff notified defendants that the Board of Trustees of the Plan had determined that MGM's Cabinet had withdrawn from the Plan. If defendants disputed this determination, they had to advise the Board in writing within ten days from the date of the letter. The letter further stated that MGM's Cabinet's computed withdrawal liability was $172,045. A payment schedule was set forth consisting of 61 total installments of $3,340, starting on June 1, 2005, and ending with a final payment of $1,491 on July 1, 2010 (Perkins Decl. Exh. 1).

Defendants responded in a letter dated May 27, 2005. They requested a review of the determination of withdrawal liability. They also sought arbitration of the determination following exhaustion of administrative remedies under ERISA (Perkins Decl. Exh. 2). Defendants did not make further monthly installments.

Plaintiff wrote another letter dated September 10, 2007, to defendants. In light of defendants' non-payment, the Pension Fund elected to require immediate payment of the entire withdrawal liability plus accrued interest. At that point, the total amount of $219,923.45 consisted of the $172,045 principal and $47,878.45 interest (calculated at the rate of 10% per

annum through September 30, 2007). Interest would continue to accrue at the rate of $57.034 per day until the Pension Fund was paid in full (Perkins Decl. Exh. 3).

The Pension Fund filed suit on February 27, 2008, to collect the withdrawal liability ($172,045), accrued interest ($18,890.54), and reasonable attorney's fees, costs, and expenses. Both defendants were served in early March. They did not respond. Plaintiff then filed a request to enter default on May 1, which the clerk entered on May 5. On June 3, the Pension Fund moved for default judgment.

Defendant Mr. Moxley appeared at the default judgment hearing on July 24. He apologized for not having filed a timely response and submitted to the Court's jurisdiction. Given that he is a *pro se* litigant, Mr. Moxley was allowed to file an opposition to the motion for default judgment by August 7. He has since filed an opposition, saying that he made a timely request for arbitration and that there was no withdrawal liability.

**ANALYSIS**

Under FRCP 55(b)(2), a plaintiff can apply to the district court for a default judgment against a defendant that has failed to otherwise plead or defend against the action. Default judgments are generally disfavored as "cases should be decided upon their merits whenever reasonably possible." In the Ninth Circuit, a district court must consider the following factors when deciding whether or not to use its discretion in granting a motion for default judgment: (i) the possibility of prejudice to the plaintiff; (ii) the merits of plaintiff's substantive claims; (iii) the sufficiency of the complaint; (iv) the sum of money at stake in the action; (v) the possibility of a dispute concerning material facts; (vi) whether the default was due to excusable neglect; and (vii) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Here, the *Eitel* factors do not favor entry of default judgement against defendants. *First*, plaintiff seeks $172,045 in withdrawal liability, $18,890.54 in accrued interest, attorney's fees, costs, and expenses. Mr. Moxley says that he cannot afford to pay these amounts without having to file for bankruptcy. *Second*, it is difficult to evaluate the merits of

3

the claim and there is the possibility of a dispute concerning material facts. While plaintiff says that defendants are subject to withdrawal liability, Mr. Moxley asserts otherwise. He says that, in the construction industry, there is only a withdrawal if the employer terminates the union contract and continues to perform the same work. In his case, Mr. Moxley says, he did not continue to perform the same work when his business took a downturn. Nor did he renew the union contract with plaintiff after it expired. *Third*, the Federal Rules of Civil Procedure favor decisions on the merits. In the instant action, defendants strongly oppose entry of default judgment. Mr. Moxley made a general appearance.

*Fourth*, denying this motion would not prejudice the plaintiff. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [ plaintiff's] ability to pursue his claim will be hindered.'" *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001). The Ninth Circuit further stated in *TCI*, "It should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment. For had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so. A default judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation." *Ibid*. Plaintiff's ability to pursue its claim would not be hindered by allowing defendants to pursue the matter on the merits.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is **GRANTED** and the entry of default is **SET ASIDE**. Mr. Moxley's answer or other response to the complaint shall be due on **SEPTEMBER 1, 2008**.

**IT IS SO ORDERED.**

Dated: August 18, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4